## JOHN EGAN *v.* LUMSDEN & McGOVERN.

### (No. 9,024.)

1. Absence from one's home for years, where the party left with the intention to return, if, in the meanwhile, that intention to return is not destroyed by some unequivocal act signifying a purpose to change the domicil, does not defeat this right to claim his former residence, as if it had never been interrupted by his absence. On no other principle would it be secured to officers in the army and the navy, on duty, public officials abroad, and travelers in foreign parts, to enjoy on their return the privilege of voting where they had always resided, or claim the protection of their property from unlawful seizure in their absence.

2. The court will require the party who pursues an extraordinary remedy whether by attachment or injunction, to make out a clear case to authorize judicial interference.

3. If the affidavit in attachment sets forth no legal ground to sustain the process; or, if the facts stated are untrue, it is the duty of the court upon inspecting the affidavit in the one case, and after hearing the testimony of the defendant in the other, to dismiss the order; and this is the right of the defendant which continues without limitation or qualification until final judgment.

4. And it would, therefore, seem, that if no jurisdiction attached by a failure to comply with the code, or a false representation of a fact, without which the order could not issue, all subsequent steps are alike unauthorized. If there is no legal power to attach, there can be no legal right to take a bond from the debtor, and, for the same reason there can be nothing predicated upon the fact that it was given to estop the defendant from the ordinary privilege of moving the court to dismiss the process. It is a proceeding *in rem*, and the debtor only comes in to save his property; it is not a case where there can be any such thing as a technical appearance. The object to be attained by the debtor in releasing the property from seizure, is the immediate possession of his personal chattels, or the removal of any lien upon his estate, to prevent his ordinary business being interrupted, and save the expense necessarily attending the storage of the articles, as well as the injury they might sustain by removal, etc.

5. The order of attachment is now only a provisional remedy, to be allowed after the suit is commenced, and thenceforward, at any time, until judgment is entered; and the act of receiving security as an equivalent for the property attached, is ministerial rather than judicial.

6. When the defendant is a non-resident, and can not be reached by process, the order of attachment, when executed by the seizure of property, alone, gives the court jurisdiction.

7. If the court has not obtained jurisdiction in the mode authorized by the statute, the appearance of the debtor, even can not be construed to affix the right of a creditor to his provisional remedy; it can only be an admission of service in the action. Consent never confers jurisdiction, though it may take it away.

SPECIAL TERM.—On motion to dismiss an attachment.

*W. C. McDowell*, for plaintiff.

*Tilden, Rairden & Kittredge*, for defendants.

STORER, J. An order of attachment has issued upon the affidavit of one of the defendants, who assumes to be the plaintiff's agent "that the other defendant is a non-resident." It was sued out in term time, and, on the day it was issued, the defendant, Lumsden, appeared in court, and gave the undertaking required by section 212 of the code, whereupon the property of the defendant was discharged.

The motion, now before us, is made on the ground that the defendant was not a non-resident, when the attachment issued.

It is objected that it is now too late for the defendant to make this motion, because he has appeared to the action, and acknowledged the jurisdiction of this court, by obtaining a return of the property attached, in the mode provided by the code.

If the proposition is true, the defendant's motion can not be sustained.

Section 212 of the code provides, " If the defendant, or other person on his behalf, at any time before judgment, cause an undertaking to be executed to the plaintiff, by one or more sureties, resident in the county, to be approved of by the court, in double the amount of the plaintiff's claim, as stated in his affidavit, to the effect that the defendant shall perform the judgment of the court, the attachment in such

action shall be discharged, and restitution made of any property taken under it, or the proceeds thereof. Such undertaking shall also discharge the liability of a garnishee, in such action, for any property of the defendant in his hands."

Section 213 declares that "the undertaking mentioned in the last section may, in vacation, be executed in the presence of the sheriff, having the order of attachment in his hands, or after the return of the order, before the clerk, with the same effect as if executed in court; the sureties in either case can be approved by the officer before whom the undertaking is executed."

A comparison of these sections very clearly shows the act of receiving security as an equivalent for the property attached, is ministerial rather than judicial. It may be performed by the sheriff, the clerk or the court. The return of the attachment is thereby effected, and all the rights secured to the plaintiff by this seizure saved; while the defendant remains in the possession of his property.

Before the code the process of attachment, whether against a non-resident or absconding debtor, was an original action, instituted not for the benefit of the single creditor, but for all who were disposed to avail themselves of the particular remedy. It was, however, a mode only to compel the appearance of the defendant when no service could be made upon him in the ordinary way. Hence the property was discharged by filing special bail, whereby the parties were placed in the same situation as creditors and debtors would be, where a capias or a summons had been served.

Our present remedy is peculiar. It has no analogy to any that has hitherto prevailed in Ohio. We suppose it was adopted by the legislature to afford relief long denied in a class of cases demanding the application of a more stringent mode of securing the rights of creditors. But we must, nevertheless, so guard it as to give a sensible construction to the law, and prevent, if possible, every species of

John Egan *v.* Lumsden & McGovern.

injustice that might follow from the improvident or hasty conduct of the creditors.

Instead of the former proceeding of an independent action, the order of attachment is now only a provisional remedy to be allowed after the suit is commenced, and thence forward at any time until judgment is entered. Hence the order of attachment may be dismissed, and in most cases the action still remains; as the defendant, except in the case of non-residence, is usually served with the summons that follows the filing of the petition.

Where the defendant, however, is a non-resident, and can not be reached by process, the order of attachment, when executed by the seizure of property, alone gives us jurisdiction : else the debtor would never have his day in court, and constructive notice by publication be substituted for personal service, or leaving a copy at the residence of the defendant, as is required in ordinary cases ; and thus the foreign debtor would be practically outlawed.

We apprehend, if the affidavit upon which the order of attachment issued, sets forth no legal ground to sustain the process, or if the facts stated are untrue, it is the duty of the court upon inspecting the affidavit, in the one case, and after hearing the testimony of the defendant in the other, to dismiss the order. This seems to us to be imperative, as the right of the defendant, by secs. 228 and 229 of the code, and continues until final judgment without any limitation or qualification as to time, or by reason of any intermediate step that may have been taken in the cause.

It would seem to follow as a necessary consequence, that if no jurisdiction attached, by a failure to comply with the code, or a false representation of a fact, without which the order could not issue, all subsequent steps are alike unauthorized. It can not, we think, be seriously claimed, if there is no legal power to attach, there can be any legal right to take a bond from the debtor ; and for the same reason, there can be nothing predicated upon the fact that it

was given to estop the defendant from the ordinary privilege of moving the court to dismiss the process.

This question has been decided by the supreme court of New York, where the point directly arose, under sec. 58 and sec. 59 of their code of practice. Thus in *Caldwell* v. *Colgate*, 7 Barb. 253, it was held, "Where an attachment issued against a non-resident debtor, on affidavits which were insufficient to confer jurisdiction on the officer issuing it, and after a levy made on property by the sheriff, the debtor procured its release by executing a bond with sureties, conditioned, as required by the statute, the bond is void in law, and the debtor, when sued upon the bond, is not estopped from setting up the invalidity of such bond, on the ground the proceedings under which the property was seized, were void."

So also in the matter of *Faulkner*, 4 Hill, 598, Bronson, judge, said: "This was not a proceeding *in personam*, or an action where a voluntary appearance would be sufficient to confer jurisdiction over the person, though not regularly served with process; it was a proceeding *in rem*, and the debtor only came in to save his property. It was not a case where there could be any such thing as a technical appearance."

So in 14 La. Rep. 82. The defendant gave bond with a view to be restored to the possession of the property attached in pursuance of the code of that State, and afterward obtained a rule upon the plaintiff to show cause why the attachment should not be dismissed, on the ground that it has been obtained on a false allegation. The court held "the proceeding was appropriate, as it was necessary to release the obligor, and his surety, from the bond given to regain the possession, and there was no estoppel." See, also, *Quine* v. *Mayes*, 2 Rob. La. 510.

These adjudications, to our apprehension, so fully confirm the principle we have referred to, that further argument is foreclosed.

But we are referred to 2 Bibb, 221, *Harper* v. *Bell;* 3 Missouri, 409, *Payne* v. *Snell;* 9 Smeades & Marshall, 510,

*Wharton* v. *Conger.* None of these cases impugn the doctrine we have presented. They are but imperfect dicta, pronounced upon different states of fact, and under a different rule of procedure.

We suppose the object to be obtained by the debtor, in discharging the attachment, or, to speak more particularly, in releasing the property from seizure, is the immediate possession of his personal chattels, or the removal of any lien upon his estate, to prevent his ordinary business being interrupted and save the expense, necessarily attending the storage of the articles levied on, as well as all the injury they might sustain by removal, repacking and expressage. The legislature could not have intended to furnish the debtor with the means by which he could prevent great loss to his property, while at the same time the adoption of the remedy offered should preclude him from contesting the creditor's right to sustain an attachment. If the law could be supposed to have so intended, then the unlawful attempt of a creditor to reach his debtor, by resort to the extraordinary process of attachment could never be challenged, should the debtor have given security to the sheriff, the clerk or the court, under secs. 212 and 213 of the code. We do not so understand the law, and must, therefore, hold that the defendant is not precluded by any step he has taken in this cause, from the right to set aside the order of attachment.

The plaintiff's affidavit of non-residence is expressly denied by the defendant in every material part. Other testimony has been read to support the allegations of both parties, which we have carefully considered. We have been enabled to glean from the mass, the following facts:

*First.* It is fully proved that Lumsden, the defendant, has transacted a mercantile business for the last twenty years in the city of Cincinnati.

*Second.* That he is unmarried, and has during the last five years spent much of his time in New York, Chicago,

and Milwaukee, claiming, meanwhile, that Cincinnati was his permanent residence.

*Third.* At the time the order of attachment was issued, he occupied a store in this city, where he was daily engaged in his vocation, returning each night to the city of Covington, Kentucky, where he had taken temporary boarding in the family of his sister.

*Fourth.* That several of his acquaintances understood him to make his home in Milwaukee, while those who were most intimate with him, were not so advised.

*Fifth.* That he has always resided in Cincinnati, during the whole period he has been engaged in business here.

*Sixth.* That he was in Cincinnati when the sheriff levied the order of attachment on his property, and was regularly served with the process of subpena, which always issues under the code when the action is commenced by filing a petition.

With this evidence before us, we can not arrive at any other conclusion than that the defendant was a resident of Ohio within the meaning of the statute, at the time the order of attachment issued; and there was no ground then existing, upon which the plaintiff could rely to sustain the course he has pursued.

It has ever been the policy of our court to require the party who pursues an extraordinary remedy, whether by attachment or injunction, to make out a clear case, to authorize judicial interference. So far, indeed, has this idea been carried, that in the case of *Hartshorn* v. *Wilson*, 2 Ohio, 28, decided more than thirty years ago, it was held, "the residence of the defendant could be inquired into, on certiorari from a justice of the peace, to ascertain whether that officer had jurisdiction."

Indeed, there is a wise jealousy to be exercised where a creditor invokes, before judgment, the power to interrupt the ordinary business of his debtor, to close his doors, and thus publish him to the community as a bankrupt. Too much rigor can not be used in scrutinizing the conduct and deter-

mining the motive when such a case is presented for our action.

While it is true, the injured debtor may protect himself in some degree, by a resort to his creditor's bond, any measure of damages, however large, may yet not compensate for mercantile credit suspected, much more when it is charged to be forfeited by a refusal to pay an honest debt.

The law of domicil as applicable to the remedy by attachment against a non-resident debtor, is very carefully examined by Mr. Drake in his work on Attachments, ch. 3, sec. 80 to sec. 87, where the cases are cited from the reports of the several States. The result of the doctrine, undoubtedly, is that absence from one's home, for years, when the party left with the intention to return, if, in the meanwhile, that intention to return is not destroyed by some unequivocal act, signifying a purpose to change the domicil, does not defeat this right to claim his former residence, as if it had never been interrupted by his absence.

On no other principle would it be secured to officers in the army and navy on duty, public officials abroad, and travelers in foreign parts, to enjoy on their return the privilege of voting where they had always resided, or claim the protection of their property from unlawful seizure in their absence.

Another question is raised, as to the sufficiency of the jurat to the affidavit. We need not now decide it, as it is not necessary to the disposition of this cause. We must be permitted to say, however, it is an anomalous proceeding, where one defendant appears practically as the plaintiff, though the action is in the name of another; for he assumes the responsibility of the action, and can alone be liable criminally, should the affidavit be false.

The order of attachment will be dissolved.

Motion granted.